## Richmond

## MARCELLA JEAN JORDAN

v.

## NEIL SAUVE AND KOONS FORD, INC.

October 6, 1978.

Record No. 770352.

Present: All the Justices.

*Gwendolyn Jo M. Carlberg,* for plaintiff in error.

*Richard F. Dixon (Swinburne & Dixon,* on brief) for defendant in error.

*Amicus Curiae;* Center for Auto Safety and Automobile Owners Action Council *(Clarence M. Ditlow, III [D.C.]; Thomas K. Wilka [D.C.]; L. Irene Bowen [D.C.]; Claire Moise [D.C.],* on brief) for plaintiff in error.

HARMAN, J., delivered the opinion of the Court.

This is an action based on fraud in connection with the sale of an automobile to Marcella Jean Jordan (Jordan or plaintiff) by an automobile salesman, Neil Sauve (Sauve) and Koons Ford, Inc. (Koons or dealer), Sauve's employer. By her pleadings plaintiff sought to recover both compensatory and punitive damages. At the conclusion of the plaintiff's evidence, the trial court struck her claim for punitive damages. At the conclusion of all the evidence the issue of fraud was submitted to a jury which found for plaintiff and awarded her $430 in compensatory damages. Final judgment was entered on this verdict. We granted plaintiff a writ of error to review her claim that the trial court erred in holding her evidence insufficient to create a jury issue on the punitive damage claim. Neither Sauve nor Koons has challenged the award of compensatory damages, which has become final.

Because the trial court struck the evidence on the claim for punitive damages, we view the evidence relating to that claim in the light most favorable to the plaintiff. *Surface, Adm'x* v. *Johnson, Adm'x,* 215 Va. 777, 214 S.E.2d 152 (1975). Viewed in this light,

the record discloses that Jordan, who wanted to purchase a new Ford Pinto automobile, learned from a television commercial that Koons was offering new cars of that make for sale at a discount. On September 1, 1973, she phoned the dealership, spoke with Sauve, and later went to the dealer's showroom where she met Sauve.

After looking at several automobiles, plaintiff became interested in the 1973 Pinto three-door runabout automobile which she subsequently purchased. It was Sauve's representations to the plaintiff about this car that gave rise to her claim.

The car was represented to plaintiff as a new car. Upon inspection plaintiff discovered that its odometer registered 201.7 miles and that the manufacturer's suggested retail price sticker required by federal law was not affixed to one of the car windows. When asked about this, Sauve told her that the mileage "could have come from moving the car from lot to lot or exchange from another dealer" and that the price sticker "must have fallen off". Other evidence discloses, however, that this same car had been the subject of a contract of sale between Koons and Gloria A. Wise (Wise) on August 20, 1973, and that Wise and Koons had executed a Virginia Division of Motor Vehicles application for title to the vehicle on that date. The record also shows that motor vehicle license plates and a registration card had been issued to Wise by the Virginia Division of Motor Vehicles. Because she was dissatisfied with the "stick shift" on the car after driving it for 10 days, Wise returned it to Koons on August 30 and purchased another car from the dealer.

Sauve represented to Jordan that the sticker price on the Pinto was $2633.98 and that plaintiff was receiving a "special" or "close-out" discount of $183.98. A copy of the window sticker shows, however, that the sticker price of the car was $2503. The order form and other documents relating to the Wise transaction reveal that she contracted to pay $2533, including a $30 charge for undercoating, for the vehicle.

Jordan testified that Sauve told her the car was equipped with "power disc brakes". Indeed, the order prepared by Sauve and signed by Jordan shows that the vehicle was a "new" car equipped with "P/disc Brakes". In the dealer's copy of this order, "P/disc Brakes" was subsequently changed to "F/disc Brakes" by Sauve

without Jordan's knowledge or consent. The application for financing also shows the car equipped with "power disc brakes" although this option was not available from the manufacturer, and the vehicle delivered to Jordan did not have power disc brakes.

Plaintiff testified that she indicated to Sauve that she intended to obtain "bank financing" through her own bank for part of the purchase price of the car. Sauve told plaintiff that it was unnecessary for plaintiff to go to her bank to obtain financing as Koons "had banks through which . . . [she] could obtain financing". Koons prepared the finance documents, and Jordan testified she did not read them before signing them. She later discovered that, instead of bank financing at the then prevailing rate of 8¾%, the purchase was financed by Koons through Ford Motor Credit Corporation, a finance company, at an annual percentage rate of 15.46%. Plaintiff also testified that $46.18, the cost of decreasing term life insurance, was included in the amount financed although she did not authorize it.

On the same day the car was delivered to her, plaintiff discovered that one of the keys furnished to her was not a correct key for the car and that the owner's manual was missing. Koons subsequently corrected the locks and provided plaintiff with an owner's manual.

Jordan testified that she attempted to cancel her agreement and return the car to Koons on September 4, the first business day after sale, but that Koons refused her request.

Plaintiff says that the above evidence was sufficient to create a jury issue on her claim for punitive damages. Sauve and Koons argue, however, that this evidence, while sufficient to support a recovery of compensatory damages for fraud, fails to show actual or express malice. Relying on *Giant of Virginia* v. *Pigg*, 207 Va. 679, 152 S.E.2d 271 (1967), and *F.B.C. Stores, Inc.* v. *Duncan*, 214 Va. 246, 198 S.E.2d 595 (1973), they argue there can be no recovery of punitive damages in an action alleging fraud in the absence of a showing of actual or express malice. This reliance on *Pigg* and *Duncan* is misplaced.

In discussing the proof necessary to support an award of punitive damages in *Pigg*, we pointed out:

> "Punitive or exemplary damages are allowable only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others. They are allowed not so much as compensation for plaintiff's loss, as to warn others and to punish the wrongdoer, if he acted wantonly, oppressively, or with such malice as to evince a spirit of [mischief] or criminal indifference to civil obligations. Wilful or wanton conduct imports knowledge and consciousness that injury will result from the act done. [citations omitted]." 207 Va. at 685-86, 152 S.E.2d at 277.

While finding that legal malice could be inferred by a showing of a want of probable cause, we held that actual or express malice necessary to support an award for punitive damages could not be inferred from such a showing. 207 Va. at 685, 152 S.E.2d at 276.

Likewise, in *Duncan* which was an action for false imprisonment, we held that while a showing of legal malice, inferred from the circumstances, might be sufficient to sustain an award of compensatory damages, punitive damages can be supported only by proof of actual malice. 214 Va. at 216, 198 S.E.2d at 600.

More recently in *Lee v. Southland Corp.*, 219 Va. 23, 27, 244 S.E.2d 756, 759 (1978), we said:

> "In a malicious prosecution action, it is proper to award punitive damages only when actual malice, or malice in fact, has been established by the evidence. Legal malice, which may be inferred from want of probable cause, is not sufficient. Actual malice, or malice in fact, may be established by showing that the prosecutor's action was prompted by ill will, malevolence, grudge, spite, wicked intention, or a conscious disregard of the rights of another. *Pigg, supra*, 207 at 685-86, 152 S.E.2d at 277, and the many cases there cited."

*Lee* stands for the further proposition that actual malice, or malice in fact, may be proven by circumstantial evidence. 219 Va. at 27, 244 S.E.2d at 759.

We hold that the same rule of the proof necessary to support a claim for punitive damages which applies to actions for false arrest, false imprisonment and malicious prosecution also applies to a claim for punitive damages in an action based on fraud; namely, that punitive damages may be recovered only if there is proof, either direct or circumstantial, showing actual malice.

In its consideration of the motion to strike the plaintiff's claim for punitive damages, the trial court should have resolved any reasonable doubt as to the sufficiency of the evidence in plaintiff's favor and should have granted the motion only if it was conclusively apparent that the plaintiff had proved no cause of action for punitive damages against defendants, or if it plainly appeared that the court would have been compelled to set aside any verdict for punitive damages found for the plaintiff as being without evidence to support it. All inferences which may be fairly drawn from the evidence must be considered most favorably to the plaintiff and where there are several inferences which may be drawn, though they differ in degree of probability, the court must adopt those most favorable to the party whose evidence it is sought to have struck out, unless the inferences be strained, forced or contrary to reason. *Semones* v. *Johnson*, 217 Va. 293, 294-95, 227 S.E.2d 731, 733 (1976).

The question then becomes whether the plaintiff's evidence, and all reasonable inferences therefrom, was sufficient to permit the jury to find that Sauve was so reckless or negligent as to evince a conscious disregard of the plaintiff's rights; that is, whether Sauve acted wantonly, oppressively, or with such malice as to evince a spirit of mischief or criminal indifference to civil obligations. We think it sufficient in this respect.

In awarding compensatory damages to the plaintiff, the jury necessarily found that Sauve committed legal fraud in connection with the sale to Jordan. While Sauve denied any misconduct, or having knowledge of the Wise transaction, that transaction was certainly known to Koons as it was recorded in the company's records, records which were available to Sauve but not to Jordan.

Indeed, Sauve and a corporate officer of Koons both testified that even had they been aware of the Wise transaction, they would have sold the car to Jordan as a new car.

Considered in a light most favorable to plaintiff, the evidence of Sauve's misrepresentation that the car was new, coupled with his misstatements about the accumulated mileage, price sticker, brakes, sticker price and discount, and financing, would have justified the jury in finding Sauve's misconduct to be of such a reckless and negligent character as to evince a conscious disregard of Jordan's rights. Though not inevitable, this was a possible conclusion, making the punitive damage issue one for the jury to decide on proper instructions.

Therefore, we will reverse that part of the judgment order of the trial court which denied the plaintiff's claim for punitive damages, and the case will be remanded for a new trial solely on that issue.

*Reversed in part and remanded.*